## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TAMMY HURD,                                  :
                                             :
                     Plaintiff,              :
                                             :
        v.                                   :
                                             :
DELAWARE STATE UNIVERSITY and                :        C.A. No. 07-117
DANDESON PANDA, individually and in his      :
official capacity,                           :
                                             :
                     Defendants.             :

## OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT DELAWARE STATE UNIVERSITY

Respectfully submitted by:

**WHITE AND WILLIAMS LLP**

**MARC S. CASARINO (#3613)**
**JENNIFER HURVITZ BURBINE(#4416)**
824 N. Market Street, Suite 902
Wilmington, DE 19801
Telephone: 302-467-4520
Facsimile: 302-467-4550
Attorneys for Defendant *Delaware State University*

Dated:  May 30, 2008

- 1 -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENTS ..................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENTS ................................................................................................................... 9

    I. STANDARD OF REVIEW ........................................................................................ 9

    II. PLAINTIFF'S § 1983 CLAIM AGAINST DSU FAILS AS A MATTER OF LAW .... 9

    III. PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DSU PURSUANT
       TO TITLE IX ........................................................................................................ 10

        A. Application of the Gebser Standard .................................................................. 11

        B. Plaintiff Does Not State A Claim Of Quid Pro Quo Harassment .......................... 11

        C. Plaintiff Does Not State A Hostile Environment Sexual Harassment Claim ........ 12

           1. No Subjectively Hostile Environment ............................................................. 13

           2. No Objectively Hostile Environment ............................................................. 13

        D. DSU Reasonably Responded And Was Not Deliberately Indifferent .................... 15

    IV. PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DSU PURSUANT
       TO TITLE VI ........................................................................................................ 18

    V. PLAINTIFF HAS FAILED TO STATE A CLAIM WARRANTING IMPOSITION
       OF PUNITIVE DAMAGES ................................................................................ 21

CONCLUSION ................................................................................................................ 23

## TABLE OF AUTHORITIES

### CASES

Alegria v. State of Texas, 2007 WL. 3256586 (S.D.Tex. Nov. 2, 1997) ...............................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)...............12

Aoutif v. City Univ. of New York, 2005 WL. 3334277 (E.D.N.Y. Dec. 8, 2005...............................10

Babiker v. Ross Univ. Sch. of Med., 2000 WL. 666342 (S.D.N.Y. May 19, 2000) ......................9, 10

Black v. Zaring, 104 F.3d 822 (6th Cir. 1997) .....................................................................................3

Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2nd Cir. 1998),
  cert. denied, 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999)) ......................................13

Carter v. Delaware State Univ., 2002 WL. 335309 (D. Del. Feb. 27, 2002), aff'd, 2003 WL
  1879258 (3rd Cir. Apr. 16, 2003) .......................................................................................1, 12, 13

Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ...........................12

Frederick v. Simpson College, 149 F. Supp. 2d 826 (S.D.Iowa 2001) ..........................................6, 13

Gallant v. Board of Trustees of California State Univ., 997 F. Supp. 1231 (N.D.Cal. 1998)..............3

Gebser v. Lago Vista Indep. Sch. Dist.,
524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)......................................................1, 2, 5, 13

Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).................2, 3

Hayut v. State Univ. of New York, 352 F.3d 733 (2nd Cir. 2003) ....................................................7, 8

Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300 (3rd Cir. 1995) .................................12

Johnson, 267 F. Supp. 2d at n.5 .............................................................................................................4

Johnson, 267 F. Supp. 2d, n.6.................................................................................................................8

Johnson v. Galen Health Institutes, Inc., 267 F. Supp. 2d 679 (W.D.Ky 2003)................................2, 3

Klemenic v. Ohio State Univ., 10 F. Supp. 2d 911 (S.D.Ohio 1998)....................................................3

Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999) ....11, 12

Kraus v. Howroyd-Wright Employment Agency, Inc., Case No. 06-975 (E.D.Pa. Jan. 8, 2008) ........4

PHLDMS1 4318423v.1

Lafate v. Chase Manhattan Bank (USA), 123 F. Supp. 2d 773 (D. Del. 2000) ...........................11, 12

Langadinos v. Appalachian Sch. of Law, 2005 WL. 2333460 (W.D.Va. Sept. 25, 2005)........9, 10, 11

Levarge v. Preston Bd. of Educ., 2008 WL. 691694 (D. Conn. Mar. 11, 2008) (quoting Bruneau
    ex rel. Schofield v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2nd Cir. 1998), cert.
    denied, 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999)).............................................. 13

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S.
    Ct. 1348 (1986)................................................................................................................................12

McKay v. Delaware State Univ., 2000 WL. 1481018 (D. Del. Sept. 29, 2000) ................................12

Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S. Ct.
    2615, 69 L. Ed. 2d 435 (1981)........................................................................................................13

Pfeiffer by Pfeiffer v. Marion Center Area Sch. Dist., 917 F.2d 779 (3rd Cir. 1990)........................13

Tripp v. Long Island Univ., 48 F. Supp. 2d 220 (E.D.N.Y. 1999) ......................................................10

## STATUTES

20 U.S.C. § 1681(a) ...........................................................................................................................13

42 U.S.C. § 1983..........................................................................................................................4, 5, 12

42 U.S.C. § 2000d................................................................................................................................8

Fed.R.Civ.P. 56(c) .............................................................................................................................12

PHLDMS1 4318423v.1

## NATURE AND STAGE OF THE PROCEEDINGS

On February 26, 2007, Plaintiff Tammy Hurd ("**Plaintiff**") filed a complaint against Delaware State University ("**DSU**") and Dandeson Panda ("**Dr. Panda**") alleging claims of discrimination on the basis of sex and race in the terms, conditions, and privileges of Plaintiff's education under provisions of Title IX of the Education Amendments of 1972, and Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.

On May 30, 2008, DSU filed a motion for summary judgment as to all claims raised in Plaintiff's complaint. This is DSU's opening brief in support of its motion for summary judgment.

PHLDMS1 4318423v.1

## SUMMARY OF ARGUMENTS

1.      DSU is a state entity immunized by the Eleventh Amendment of the United States' Constitution from liability on Plaintiff's claim under 42 U.S.C. § 1983. Alternatively, Plaintiff's claim under 42 U.S.C. § 1983 is subsumed by her claim under Title IX of the Education Amendments of 1972 ("**Title IX**"). Accordingly, Plaintiff cannot maintain her claim against DSU under 42 U.S.C. § 1983 and it must be dismissed as a matter of law.

2.      To establish a *prima facie* claim under Title IX, Plaintiff must prove (i) *quid pro quo* harassment or hostile environment sexual harassment, (ii) actual notice by DSU of such harassment, and (iii) that DSU's effort to remediate the harassment was so unreasonably that it constitutes deliberate indifference. Plaintiff has failed to demonstrate either *quid pro quo* harassment or hostile environment sexual harassment. Plaintiff has failed to demonstrate that DSU had actual knowledge of conduct constituting actionable sexual harassment. Plaintiff has failed to demonstrate that DSU's response to her complaint under the circumstances then known was so unreasonable to amount to deliberate indifference. Having proven none of the essential elements, Plaintiff's claim under Title IX must be dismissed.

3.      To establish a *prima facie* case under Title VI of the Civil Rights Act of 1964 ("**Title VI**"), Plaintiff must prove (i) DSU intentionally discriminated against her on account of her race, (ii) DSU is receiving federal financial aid, and (iii) Plaintiff was an entitled beneficiary of the program or activity receiving the aid. There is no need to consider elements (ii) and (iii) because Plaintiff has failed to prove element (i). There is no evidence that DSU intentionally discriminated against Plaintiff on account of her race. Accordingly, Plaintiff's Title VI claim must be dismissed.

4.      There is no basis to impose punitive damages and that request for relief must be stricken from Plaintiff's claims against DSU.

PHLDMS1 4318423v.1

## STATEMENT OF FACTS

Plaintiff, a Caucasian female, began taking courses at DSU in the Spring 2003 semester for a degree in Marketing.[1] Dr. Panda, an African-American male, was a professor teaching business-related courses at DSU from January, 1989 through March 24, 2005.[2] Plaintiff took several courses taught by Dr. Panda, including one in the Fall 2004 semester and one in the Spring 2005 semester.

### The Fall Semester Conversations

In September, 2004, near the beginning of the Fall semester course, Dr. Panda was called away from the classroom to the hallway for a brief meeting with an unknown person.[3] Plaintiff took advantage of the break in the class to go into the hallway to make a call using her cell phone.[4] According to Plaintiff, Dr. Panda asked if she had received a "booty call" as he passed by her in the hallway.[5] Dr. Panda denies having made the alleged comment to Plaintiff.[6] After completing her call, Plaintiff returned to class.[7] However, she never told anyone about this incident.[8]

At the end of the Fall semester in December, 2004, as Plaintiff was turning in her final examination at the front of the classroom, she allegedly engaged in the following banter with Dr. Panda:

> **Dr. Panda:**    Derek has something for you.  Derek says he has
> something really big for you.

---

[1] Plaintiff transferred to DSU from Delaware Technical and Community College ("**Delaware Tech**"). DSU accepted Plaintiff's 70 credit hours of courses taken at Delaware Tech. While Plaintiff's Delaware Tech transcript indicates that she was a "Marketing & Management" major, at DSU Plaintiff's major was only "Marketing." There is no record that Plaintiff enrolled for a dual degree from DSU. See Plaintiff's Delaware Tech and DSU transcripts at Appendix to Opening Brief in Support of Motion for Summary Judgment by Delaware State University p. A1 to A 4 (hereinafter references to the Appendix are "**App. A1 to A195**").

[2] As detailed herein, Dr. Panda was relieved of all duties and removed from DSU's campus as of March 24, 2005, however, his employment at DSU did not formally end until June 30, 2005.

[3] Chronology at App. A5 to A9 and Transcript of Deposition of Tammy Hurd (hereinafter "**Plaintiff Dep**") p. 16 ln 6-13 and p. 17 ln 1-6 at App. A10 to A11. Dr. Panda denies the conduct attributed to him in the chronology by Plaintiff. See Transcript of Deposition of Dandeson Panda (hereinafter "**Panda Dep**") p. 92 ln 12-16 (Exhibit 5 referenced in that testimony is the chronology) at App. A38.

[4] Chronology at App. A5 to A9 and Plaintiff Dep p.16 ln 6-13 at App. A10.

[5] Chronology at App. A5 to A9 and Plaintiff Dep p. 16 ln 8-15 App. A10.

[6] Panda Dep p.89 ln 14-19; p. 92 ln 17-19 at App. A37 to A38.

[7] Chronology at App. A5 to A9 and Plaintiff Dep p. 17 ln 10-16 at App. A11.

[8] Plaintiff Dep p.17 ln 22 to p.18 ln 7 at App. A11 to A12.

- 3 -

**Plaintiff:**    Derek has a girlfriend he does not need me and I live with my boyfriend.  Derek is the big man on campus.  He does not need any more girls.

**Dr. Panda:**    Derek says he has something that will be really big for you.

**Plaintiff:**    Well Derek will has (sic) to get in line with everyone else.  I live with my boyfriend.

*[Plaintiff claims to have then informed Dr. Panda that she would be in his class next semester and requested that he e-mail her the syllabus so that she could get a head start on her notes.  Plaintiff claims Dr. Panda told her to leave her e-mail address and he would forward her the syllabus.]*

**Dr. Panda:**    (*allegedly picking up after the discussion about the course syllabus*) Derek tells me he has something for you.

**Plaintiff:**    Derek will have to get in line.  My son wants to know what they do once they get in line.

**Dr. Panda:**    What do they do once they get in line?

**Plaintiff:**    They be (sic) patient.

**Dr. Panda:**    I want to get in line too.

**Plaintiff:**    You want to get in line?

**Dr. Panda:**    Yes what do I have to do get in line?

**Plaintiff:**    What place do you want in line?  You have to be patient, like everyone else, I live with my boyfriend.

**Dr. Panda:**    I want to be first.

**Plaintiff:**    You are being bad.  Don't forget to e-mail me the syllabus so that I can get a head start.  I want to be prepared for next semester.

**Dr. Panda:**    You right (sic) we shouldn't hook up.  If we hooked up you would be with your boyfriend and scream my name.  You would be making love to your boyfriend and you would scream out Panda Panda.  Then your boyfriend would wonder what you were screaming.

**Plaintiff:**    You are being bad, don't forget to e-mail me. (*Plaintiff claims to have "laughed off" the situation and then left the classroom*).[9]

Dr.  Panda denies having this exchange with Plaintiff.[10]  The "Derek" referenced in this exchange is Derek Batton, a Caucasian male who was Plaintiff's classmate and romantic partner.[11]  Plaintiff cannot recall whether she was dating Mr. Batton at the time of the alleged comments about their relationship by Dr. Panda.[12]  Plaintiff claims that her December, 2004 repartee with Dr. Panda, where she initiated

---

[9] Chronology at App. A5 to A9 .

[10] Panda Dep p.98 ln 3-12; p.102 ln 20 to p.103 ln 17 at App. A39.

[11] Plaintiff Dep p.85 ln 23 to p.86, ln 3 at App. A23b to A23c .

[12] Plaintiff Dep p.84 ln 4-20 at App. A23a.

PHLDMS1 4318423v.1

a joke about him getting in line with other men to have a relationship with her, made her feel uncomfortable.[13]

### The January, 2005 Meeting

Plaintiff apparently mentioned her discomfort to another professor, who in turn called Mark Farley, Vice President of Human Resources for DSU, and left a message advising of the matter.[14]  Mr. Farley immediately telephoned Plaintiff and set up a meeting for the next day, January 3, 2005.[15]  At that meeting, Plaintiff did not tell Mr. Farley about the September, 2004 "booty call" comment.[16] Plaintiff told Mr. Farley only about Dr. Panda's alleged "Derek has something big for you" comment and suggested that she was uncomfortable with Dr. Panda inquiring about her dating life.[17]  Mr. Farley pressed whether there were any other incidents, but Plaintiff recounted only the single December, 2004 classroom banter.[18]

Throughout their January, 2005 meeting, Plaintiff emphasized to Mr. Farley that she did not want to pursue a claim against Dr. Panda.[19]  She told Mr. Farley that her purpose for mentioning the December, 2004 conversation was to set the stage for a challenge to any unfavorable grades she might receive in a future course taught by Dr. Panda.[20]  Despite such questionable motive, Mr. Farley remained willing to investigate the lone December, 2004 conversation but Plaintiff made absolutely clear that she did not want the matter to proceed beyond the January, 2005 meeting.[21]

---

[13] Plaintiff Dep p.29 ln 8-13 at App. A10a.

[14] Transcript of Deposition of Mark Farley (hereinafter "**Farley Dep**") p.6, ln 1-9 at App. A47. Although Mr. Farley initially recalled that Dr. Nanda Viswanathan had reported this information to him, it was not Dr. Viswanathan and Mr. Farley cannot recall who left him the message. See Farley Dep p.37, ln 12-15 at App. A56.

[15] Farley Dep p.37, ln 16 to p.38, ln 1 at App. A56 to A57; Plaintiff Dep p.90, ln 7-9 at App. A26.

[16] Plaintiff Dep p.91, ln 10-18 at App. A27 (Plaintiff concedes being uncertain that she mentioned the "booty call" comment); Farley Dep p.26, ln 4-22 at App. A53 (Plaintiff did not address "booty call" comment at January, 2005 meeting).

[17] Farley Dep p.26, ln 4-22 at App. A49. Plaintiff did not mention her subjective belief that the "something" Derek supposedly had for her was a sexual reference, and Mr. Farley understood this to mean that Derek had a romantic interest in Plaintiff – which was true. See Farley Dep p.8, ln 2-18 at App. A49 (Plaintiff did not attach sexual innuendo to the "Derek has something for you" banter until after the January 3, 2005 meeting).

[18] Farley Dep p.38 ln 21 to p.40 ln 1 at App. A57 to A59.

[19] Farley Dep p.6, ln 6-9; p. 8, ln 21-22; p. 10, ln 7-9 at App. A47 to A50.

[20] Plaintiff Dep p.90, ln 15-23 at App. A26.

[21] Plaintiff Dep p.90 ln 24 to p. 91, ln 3 at App. A26 to A27.

- 5 -

Since Plaintiff never advised Dr. Panda that she felt uncomfortable about their December, 2004 exchange, Mr. Farley suggested that Dr. Panda should be at least warned to refrain from similar discussions with Plaintiff.[22]  Given Plaintiff's adamant position that Dr. Panda not know about her discussing the matter with anyone, it was agreed that any such advice to Dr. Panda should come from Plaintiff and not from Mr. Farley.[23]  Plaintiff claims to have sent an email in this regard to Dr. Panda on or about January 4, 2005.[24]

Mr. Farley closed the January 3, 2005 meeting with Plaintiff with the promise that he would honor her request not to pursue a complaint against Dr. Panda.  Mr. Farley gave Plaintiff his cell phone and home phone numbers and instructed her to contact him immediately should any further incidents occur that made her feel uncomfortable.[25]  Mr. Farley did not hear from Plaintiff between their January 3, 2005 meeting and March 21, 2005.[26]  During that time period, DSU was unaware of any incidents between Plaintiff and Dr. Panda.[27]

### The March, 2005 Additional Complaints

On or about March 21, 2005, DSU President Dr. Allen Sessoms received from Plaintiff a letter proclaiming that Plaintiff had been subjected to continuing sexual *and racial* harassment by Dr. Panda.[28]  President Sessoms promptly turned the letter over to Mr. Farley for further investigation.[29]  Mr. Farley immediately scheduled another meeting with Plaintiff.[30]  That meeting was held on March 21, 2005 in Mr. Farley's office at which time Plaintiff presented Mr. Farley with a typewritten

---

[22] Farley Dep p.29, ln 12-21; p. 38, ln 8-20 at App. A54 to A57 .

[23] Farley Dep p.35, ln 7-15 at App. A55.  See also Farley Dep p. 45 ln 16 to p. 46 ln 17 at App. A64 to A65  (There was never a concern expressed at the January, 2005 meeting that Dr. Panda may retaliate against Plaintiff if he learned about her complaint).

[24] See January 4, 2005 email from Plaintiff to Dr. Panda at App. A90 .  See also Farley Dep p.44, ln 12-15 at App. A63 (purpose for email was to strictly to advise Dr. Panda that conversations similar to December, 2004 banter were unwelcome, but Plaintiff's email diluted this purpose by primarily discussing future courses and related syllabi).

[25] Farley Dep p.7, ln 19-23; p. 20, ln 17-21 at App. A48 to A52 .

[26] Farley Dep p.7 ln 24 to p. 8 ln 1 at App. A48 to A49.

[27] Farley Dep p.41, ln 22 to p. 42, ln 17 at App. A60 to A61.

[28] See undated letter from Plaintiff to President Sessoms at App. A89.  Note, this is the first record of Plaintiff having told DSU about alleged racial harassment.

[29] Transcript of Deposition of Allen Sessoms p.38 -39 at App. A87 to A88.

[30] Farley Dep p. 42, ln 9-10 at App. A61.

PHLDMS1 4318423v.1

chronology of incidents with Dr. Panda that occurred between September, 2004 and March 17, 2005 and that Plaintiff considered sexually and racially harassing.[31] Mr. Farley was blindsided by the new allegations since Plaintiff had never reported them to DSU.[32]

### Prompt And Reasonable Investigation

Mr. Farley immediately called a meeting with Dean Patrick Liverpool and Dr. Nanda Viswanathan to discuss Plaintiff's new allegations.[33] They then called Dr. Panda to the meeting and asked him to address each of the allegations raised in Plaintiff's chronology.[34] Dr. Panda generally denied the allegations.[35] Mr. Farley, Dean Liverpool and Dr. Viswanathan recommend to President Sessoms that Dr. Panda be immediately placed on leave and to remain off campus pending further investigation of Plaintiff's complaints.[36]

Dr. Panda was suspended from campus effective March 24, 2005.[37] Continuing his comprehensive investigation of the allegations raised in Plaintiff's chronology, Mr. Farley interviewed numerous witnesses either in person or by telephone.[38] Although many of these witnesses had no knowledge of Dr. Panda having ever sexually or racially harassed anyone, two more students came forward with sexual harassment allegations against Dr. Panda.[39] Given these students' allegations, DSU determined to proceed with disciplinary action against Dr. Panda in accordance with the relevant collective bargaining agreement.[40] However, Dr. Panda decided to voluntarily withdraw from

---

[31] Chronology at App. A5 to A9. Plaintiff Dep p. 96, ln 1-8 at App. A29.

[32] Farley Dep p. 43, ln 9-22 at App. A62. Plaintiff Dep p. 95 ln 22-24; p. 96, ln 15-18 at App. A28 to A29 (Plaintiff did not create chronology until after January, 2005 meeting with Mr. Farley).

[33] Farley Depo p. 52, ln 1-5 at App. A71.

[34] Id.

[35] Transcript of Deposition of Dr. Nanda Viswanathan (hereinafter "**Viswanathan Dep**") p. 20 ln 13-16 at App. A84.

[36] Viswanathan Dep p.73 ln 13 to p. 74 ln 10 at App. A85 to A86.

[37] See March 24, 2005 letter from President Sessoms to Dr. Panda at App. A91.

[38] Farley Dep p.47 ln 1 to p. 63 ln 19 at App. A66 to A82 (lengthy summary of detailed investigation).

[39] These students' complaints about Dr. Panda were previously unknown to DSU. Following the January, 2005 meeting with Mr. Farley, Plaintiff apparently discussed her complaints about Dr. Panda on campus and at work in an effort to drum up support from other students. See Plaintiff Dep p. 43 ln 23 to p. 44 ln 2 at App. A12 to A13 ; Farley Dep p. 14 ln 5-16 and p. 47, ln 1-5 at App. A51 to A66 .

[40] Farley Dep p. 66 ln 8-13 at App. A83.

employment by DSU before such disciplinary measures were taken.[41]  A voluntary separation from employment agreement was executed by Dr. Panda and DSU on June 1, 2005 and Dr. Panda was officially separated from employment by DSU effective June 30, 2005.[42]

### Efforts To Prevent Any Academic Or Other Harm To Plaintiff

Since Dr. Panda was not permitted to return to campus after March 24, 2005, other instructors took over Dr. Panda's classes to avoid any disruptions to the students for the couple of weeks left in the Spring 2005 semester.[43]  Subsequent to her March, 2005 complaints, Plaintiff alleged that she felt uneasy about returning to campus due to concern for her safety.[44]  Despite lack of any credible evidence that Plaintiff's safety was in jeopardy, DSU permitted Plaintiff to complete her Spring 2005 courses by home study.[45]  Mr. Farley also advised Plaintiff that she would be permitted to complete her courses after the Spring 2005 semester by home study if she still felt uncomfortable returning to campus.[46]  Plaintiff was to contact Mr. Farley to make arrangements if she wished to complete said courses by home study.[47]  Plaintiff made no effort to follow up with DSU to complete her remaining courses for her Marketing degree.[48]  Plaintiff claims to have obtained enough credits to qualify for a degree in Business Management, however, she concedes having never followed up with DSU to confirm the status of any such degree.[49]

---

[41] Panda Dep p. 131 ln 1 to p. 135 ln 22 at App. A42 to A46.
[42] Id.
[43] Viswanathan Dep p. 83 ln 10 to p. 88 ln 17 at App. A86.
[44] Plaintiff Dep p. 50 ln 10 to p. 51 ln 1; p. 88 ln 23 to p. 89 ln 19 at App. A18 to A25.
[45] Plaintiff Dep p. 100, ln 17-24 at App. A30.
[46] Plaintiff Dep p 101, ln 10-22 at App. A31.
[47] Id.
[48] Id.
[49] Plaintiff Dep p. 101, ln 6-9 at App. A31.

## ARGUMENTS

### I.    Standard Of Review.

Summary judgment should be granted if the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[50]  The moving party bears the burden of proving that no genuine issue of material fact is in dispute.[51]  However, once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial'."[52]  Only "facts that could alter the outcome are 'material,' and disputes are 'genuine' only if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[53]  If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to judgment as a matter of law.[54]  The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue.[55]

### II.    Plaintiff's § 1983 Claim Against DSU Fails As A Matter Of Law.

Plaintiff's claim against DSU under 42 U.S.C. § 1983 fails as a matter of law for at least two reasons.  First, the Eleventh Amendment of the United States' Constitution bars Plaintiff's § 1983 claim against DSU.  Second, Plaintiff's § 1983 claim against DSU is subsumed by Title IX.

The Eleventh Amendment bars § 1983 claims against state entities.[56]  DSU is a state entity cloaked by the immunity afforded by the Eleventh Amendment.[57]  The Eleventh Amendment therefore

---

[50] Fed.R.Civ.P. 56(c).

[51] See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

[52] Id. at 587 (quoting Fed.R.Civ.P. 56(e)).

[53] Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3rd Cir. 1995) (citations omitted).

[54] See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

[55] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

[56] See McKay v. Delaware State Univ., 2000 WL 1481018, *10-11 (D. Del. Sept. 29, 2000) (attached as A92-A104) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)); Carter v. Delaware State Univ., 2002 WL 335309, at *7 (D.

bars Plaintiff's § 1983 claim against DSU.[58]  Moreover, Plaintiff's § 1983 claim against DSU is

subsumed by Title IX.[59]  Plaintiff's § 1983 claim against DSU fails as a matter of law and must be

dismissed because it is barred by the Eleventh Amendment and/or because it is subsumed by Title IX.

## III.    Plaintiff Has Failed To State A Claim Against DSU Pursuant To Title IX.

Title IX provides in pertinent part that, "[n]o person shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subject to discrimination under any educational

program or activity receiving federal financial assistance . . . ."[60]  To prevail on a claim of sexual

harassment under Title IX, Plaintiff must initially make a showing of either *quid pro quo* harassment

or hostile environment sexual harassment.[61]

> *Quid pro quo* harassment arises when the receipt of benefits or the
> maintenance of the status quo is conditioned on the acquiescence to
> sexual advances.  Hostile environment sexual harassment occurs when
> unwelcome sexual advances, requests for sexual favors, or other verbal
> or physical conduct have the purpose or effect of unreasonably
> interfering with an individual's performance or creating an intimidating,
> hostile or offensive environment.[62]

In Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the

Supreme Court further refined the elements of a Title IX claim with respect to claims against

educational institutions arising from alleged sexual harassment of a student by a teacher.  Gebser held

that educational institutions are liable under Title IX for sexual harassment of a student by a teacher

---

Del. Feb. 27, 2002) (attached at App. A105 to A113) (citing Will, 491 U.S. at 71), aff'd, 2003 WL 1879258 (3rd Cir. Apr.
16, 2003) (attached at App. A114 to A116 ).
[57] Id.
[58] Id.
[59] See Pfeiffer by Pfeiffer v. Marion Center Area Sch. Dist., 917 F.2d 779, 789 (3rd Cir. 1990) (citing Middlesex County
Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (affirming that § 1983
claim subsumed by Title IX); Levarge v. Preston Bd. of Educ., 2008 WL 691694, n. 8 (D. Conn. Mar. 11, 2008) (attached
at App. A117 to A122 ) ("A '§1983 claim [against a school district] based on the Equal Protection Clause is subsumed by
Title IX'.") (quoting Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2nd Cir. 1998), cert.
denied, 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999)).
[60] 20 U.S.C. § 1681(a).
[61] Frederick v. Simpson College, 149 F.Supp.2d 826, 835 (S.D.Iowa 2001).
[62] Id. (citations omitted).

PHLDMS1 4318423v.1

only where the institution had actual notice of the alleged harassment and responded to such notice with deliberate indifference.[63]

The facts of this case, even when considered in a light most favorable to Plaintiff, do not meet the Gebser standard for imposing Title IX liability against DSU. Plaintiff cannot prove a claim of either *quid pro quo* harassment or hostile environment sexual harassment. Even if the Court were to find that Plaintiff could satisfy the sexual harassment element, Plaintiff cannot show that DSU had the requisite knowledge or that DSU acted unreasonably in response to Plaintiff's complaint. As such, Plaintiff fails to state a claim against DSU pursuant to Title IX.

## A.    Application of the Gebser Standard

As a preliminary matter, DSU contends that application of the Gebser standard in this case requires the Court to focus on the allegations of sexual harassment, if any, actually known to DSU at the point in time when Plaintiff contends DSU first acted with deliberate indifference. Plaintiff claims that her January 3, 2005 meeting with Mr. Farley put DSU on actual notice of sexual harassment of Plaintiff by Dr. Panda and that in response DSU acted with deliberate indifference. Thus, the appropriate analysis is whether, as of January 3, 2005:

> (i) Was Plaintiff subjected to either *quid pro quo* harassment or hostile environment sexual harassment by Dr. Panda?
>
> (ii) Did Plaintiff put DSU on actual notice of any such harassment?
>
> (iii) Was DSU's reaction, based on the information and circumstances then known, so unreasonable that it constitutes deliberate indifference to Plaintiff's complaint?

The answer to each of these inquiries is "No."

## B.    Plaintiff Does Not State A Claim Of *Quid Pro Quo* Harassment

Plaintiff does not state a claim of *quid pro quo* harassment. Nothing in the record even remotely suggests that Dr. Panda conditioned receipt of a benefit, or avoidance of a detriment, upon

---

[63] Gebser, 524 U.S. at 290.

PHLDMS1 4318423v.1

Plaintiff's acquiescence to a sexual advance.  In fact, Plaintiff's own chronology of her interactions with Dr. Panda is devoid of any request for sexual relations with Plaintiff by Dr. Panda.[64]  Moreover, Plaintiff concedes that Dr. Panda never conditioned her academic results upon acquiescence to a sexual advance.[65]  Accordingly, Plaintiff does not state a claim of *quid pro quo* harassment.

### C.    Plaintiff Does Not State A Hostile Environment Sexual Harassment Claim

As previously stated, appropriate application of the Gebser analysis requires focus upon Plaintiff's educational environment as it existed up to the January 3, 2005 meeting between Plaintiff and Mr. Farley.  From her start at DSU in the Spring 2003 semester through January 3, 2005, Plaintiff can identify only a couple of incidents that she considers sexually harassing.  First, Plaintiff claims Dr. Panda made reference to a "booty call" when passing her in a hallway in September, 2004.  Second, Plaintiff recalls a December, 2004 conversation where she joked with Dr. Panda about him getting in line with other guys to have a relationship with Plaintiff.  Plaintiff claims to have "laughed off" that conversation.  Notably, the "booty call" comment was made at the beginning of the Fall 2004 semester, there was no other sexually harassing conduct during the rest of that semester, and the "get in line with other guys" colloquy was on the last day of the Fall 2004 semester.[66]

Even if accepted as true, these isolated sporadic incidents do not establish a hostile educational environment.  To establish a *prima facie* case for hostile environment under Title IX, Plaintiff "must produce evidence that her educational experience was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her education and create a sexually hostile environment."[67]  "The conduct complained of is judged both objectively and subjectively; it must be sufficiently severe or pervasive to create an environment that a reasonable

---

[64] See Chronology at App. A5 to A9 .

[65] Plaintiff Dep p.56 ln 2-5 at App. A22 (Plaintiff concedes Dr. Panda did not request sexual favors from her).

[66] There may have also been one or more incidents where Dr. Panda remarked about Plaintiff and Mr. Batton being a couple, but Plaintiff cannot recall when those occurred.

[67] Johnson v. Galen Health Institutes, Inc., 267 F.Supp.2d 679, 685 (W.D.Ky 2003) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

- 12 -

person would find hostile."[68]  In determining whether Plaintiff has established that the educational

environment at DSU was hostile or abusive, the Court must consider (1) the conduct's severity; (2) the

frequency of the abusive conduct; (3) whether it is physically threatening or humiliating rather than

merely offensive; and (4) whether it unreasonably interfered with Plaintiff's performance.[69]

### 1.    No Subjectively Hostile Environment

First, Plaintiff cannot genuinely state a subjective belief that the "booty call" comment and "get

in line with other guys" banter created a hostile educational environment.  Both comments were made

only to Plaintiff and, according to her, no one else in the class knew about them.  Thus, there is no

issue of Plaintiff feeling humiliated or otherwise demeaned before her classmates.  The "booty call"

comment apparently did not trouble Plaintiff enough to cause her to report it to anyone.  Plaintiff did

not miss any classes nor did her performance suffer as a result of either comment by Dr. Panda.  In

fact, Plaintiff could not wait to get started on work for future classes she wanted to take with Dr.

Panda.[70]  Under these circumstances, it cannot genuinely be said that Plaintiff subjectively believed her

educational environment was harassingly hostile during the Fall 2004 semester.

### 2.    No Objectively Hostile Environment

There is no reasonable basis upon which to conclude that Plaintiff's educational environment

was objectively hostile during the Fall 2004 semester.  No reasonable person could find the stray

"booty call" comment and "get in line with other guys" banter so severe as to create a sexually

harassing hostile environment.[71]  Plaintiff herself claims to have "laughed off" the "get in line with

---

[68] Johnson, 267 F.Supp.2d at 685 (citing Black v. Zaring, 104 F.3d 822 (6th Cir. 1997)).
[69] Johnson, 267 F.Supp.2d at 685 (citing Harris, 510 U.S. at 23).
[70] Indeed, Plaintiff's stated purpose for engaging Dr. Panda in December, 2004 was to request an advance of the syllabus for the next semester's course.  Plaintiff's January 5, 2005 email to Dr. Panda focused on how much she enjoyed his classes, that she wanted an advance of the syllabus for a future class, and that she may require Dr. Panda's assistance in getting into one of his classes.  Any current claim by Plaintiff that she found Dr. Panda so offensive that he created a hostile educational environment is belied by Plaintiff's own efforts to continue taking his courses.
[71] This alleged harassment is akin to the level of conduct that has historically been found not to rise to the level of severe and pervasive sexual harassment.  See e.g., Johnson, 267 F.Supp.2d 679 (professor's crude language during lectures, inappropriate touching of student and propositioning student for sex did not create an objectively hostile educational environment giving rise to liability under Title IX); Gallant v. Board of Trustees of California State Univ., 997 F.Supp.

- 13 -

other guys" banter and apparently did not find the "booty call" comment offensive enough to report to anyone. And although it was unprofessional of Dr. Panda to engage in the "get in line with other guys" banter, it equally troubling that Plaintiff was an active participant in that repartee. Plaintiff's own after-the-fact rendition of the conversation shows that after Dr. Panda agreed to send Plaintiff the class syllabus as she requested, she continued to engage him. Plaintiff herself started the flirtatious dialogue of men getting in line to have a relationship with her, asking Dr. Panda what place he wanted to be in that line, and telling him to be patient if he wants to "get in line."

The Supreme Court has cautioned that ordinary socializing, such as intersexual flirtation, should not be mistaken for sexual harassment.[72] The circumstances of this case are similar to Kraus[73], where the court determined that plaintiff's participation in flirtatious intersexual banter with a co-worker did not create an objectively hostile environment. Here, Plaintiff herself offered up the "get in line with other guys" banter. This was completely out of context with her stated reason for engaging Dr. Panda to obtain an advance of the class syllabus for the next semester. That Dr. Panda responded to Plaintiff's suggestive statements reflects poorly on his professionalism, but it does not create an objectively hostile educational environment.

Moreover, it cannot genuinely be said that the allegedly offensive comments Plaintiff attributes to Dr. Panda were frequent enough to create an objectively hostile educational environment. By Plaintiff's own admission, the stray "booty call" comment was in early September, 2004 and the "get in line with other guys" banter was in late December, 2004. According to Plaintiff, there were no sexually harassing comments by Dr. Panda for the almost four months that elapsed between the

---

1231 (N.D.Cal. 1998) (professor's graphic comments about his sexual desire for another man and a greeting kiss on student's cheek does not rise to the level of severe or pervasive sexual harassment); Klemenic v. Ohio State Univ., 10 F.Supp.2d 911 (S.D.Ohio 1998) (coach did not create a sexually hostile environment by asking the student to go out with him and sending her a sexually suggestive magazine article because the acts were not severe or pervasive).
[72] Kraus v. Howroyd-Wright Employment Agency, Inc., Case No. 06-975, at 20 (E.D.Pa. Jan. 8, 2008) (attached at App. A123 to A151) (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998)). Although these cases were premised upon work-place harassment under Title VII of the Civil Rights Act of 1964, the same analysis is applied to claims under Title IX. See e.g., Johnson, 267 F.Supp.2d at n.5.
[73] Case No. 06-975 (E.D.Pa. Jan. 8, 2008).

- 14 -

September and December incidents. These isolated comments do not create an objectively hostile educational environment.

It is undisputed that Plaintiff neither missed classes nor did her performance suffer as a result of any conduct attributed to Dr. Panda. No one else in the classes Plaintiff took with Dr. Panda reported any misconduct by Dr. Panda.[74] Thus, even considering the facts in a light most favorable to Plaintiff, it is apparent that her educational experience was not permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her education and create a sexually hostile environment. Accordingly, because there is neither *quid pro quo* harassment or hostile environment sexual harassment, Plaintiff has failed to establish an essential element of her Title IX claim, which mandates dismissal of the claim as a matter of law.

### D.    DSU Reasonably Responded And Was Not Deliberately Indifferent

Even though Plaintiff's Title IX claim must be dismissed for failure to demonstrate the requisite level of harassment, for sake of completeness DSU will demonstrate why Plaintiff's Title IX claim also fails for lack of actual notice and because DSU's response under the circumstances was reasonable. As previously stated, there was no conduct by Dr. Panda against Plaintiff that constitutes actionable sexual harassment. Thus, it cannot be said that DSU had actual notice of that which does not exist. Gebser makes clear that DSU can only be found liable under Title IX for consciously disregarding acts of sexual harassment that are actually known. This standard necessarily requires that the acts of sexual harassment exist.

At the January 3, 2005 meeting between Plaintiff and Mr. Farley, Plaintiff reported only the December, 2004 banter she had with Dr. Panda. From Plaintiff's rendition of that banter, Mr. Farley felt that Dr. Panda may have acted unprofessionally, but not that the lone colloquy between Plaintiff and Dr. Panda constituted actionable sexual harassment. Thus, DSU disputes that Plaintiff can satisfy the essential element of actual notice to maintain her Title IX claim.

---

[74] Plaintiff Dep p. 44, ln 2-20 at App. A13.

- 15 -

In the event the Court deems Plaintiff's rendition to Mr. Farley at the January 3, 2005 meeting of the December, 2004 banter with Dr. Panda to satisfy the actual notice requirement, Plaintiff's Title IX claim still fails because DSU reasonably responded to Plaintiff's complaint based on the circumstances then known. "What constitutes appropriate remedial action for allegations of discrimination in Title IX cases depends on the particular facts of each case."[75] The Court must also consider the reasonableness of the response in light of the seriousness and credibility of the complaint.[76]

It is without dispute that Mr. Farley called Plaintiff the very night she first mentioned discomfort about the December, 2004 banter with Dr. Panda and met the next day to address Plaintiff's concerns. At that meeting, Plaintiff told Mr. Farley about only the December, 2004 banter with Dr. Panda having made Plaintiff feel uncomfortable. Based on Plaintiff's version of that conversation, Dr. Panda at most responded to suggestive comments by Plaintiff about guys getting in line to have a romantic encounter with her.

While unprofessional, Dr. Panda's engaging in such banter does not constitute sexual harassment. Nevertheless, Mr. Farley explained to Plaintiff that he would follow up on her complaint. Plaintiff was adamant that Mr. Farley not follow up on her complaint. Instead, it was agreed that Plaintiff send Dr. Panda an email, with a copy to Mr. Farley, wherein Plaintiff would tell Dr. Panda to refrain from discussions with Plaintiff similar to the December, 2004 banter. Mr. Farley gave Plaintiff his cell phone and home phone numbers and *made clear to Plaintiff that she was to immediately contact Mr. Farley if any further incidents occurred*. Neither Mr. Farley nor anyone else at DSU heard any further complaints from Plaintiff until her March 21, 2005 letter to President Sessoms.

---

[75] Alegria v. State of Texas, 2007 WL 3256586, *5 (S.D.Tex. Nov. 2, 1997) (attached at App. A152 to A165) (citing Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 384 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 766, 148 L.Ed.2d 667 (2001)).
[76] Frederick, 149 F.Supp.2d at 839-40 (citations omitted).

- 16 -

Based on the facts in this case, a rational jury cannot reasonably determine that DSU acted with deliberate indifference to Plaintiff's January 3, 2005 complaint. It is beyond cavil that Mr. Farley immediately reacted to Plaintiff's complaint. Plaintiff described for Mr. Farley a sexually flirtatious banter she had with Dr. Panda and claimed it made her feel uncomfortable. Nothing about Plaintiff's initial rendition of events to Mr. Farley suggested that Dr. Panda was sexually harassing, or would in the future sexually harass, Plaintiff. Nevertheless, Mr. Farley was ready and willing to follow up on Plaintiff's complaint. Plaintiff herself instructed, actually demanded, that Mr. Farley not divulge to anyone that she had brought the matter to Mr. Farley's attention. Mr. Farley followed Plaintiff's request, but expressly told her to contact him immediately should anything further occur.

Plaintiff claims that after her January 3, 2005 meeting with Mr. Farley, Dr. Panda engaged in several other conversations with her that she deemed sexually harassing. Plaintiff never brought those incidents to Mr. Farley's attention for remediation.[77] Instead, Plaintiff left the January 3, 2005 meeting, engaged a lawyer, and began building a factual basis to bring a lawsuit against DSU.[78]

The court in Hayut v. State Univ. of New York, 352 F.3d 733 (2nd Cir. 2003) when faced with similar facts found that the university responded reasonably to the student's complaint. In Hayut, a female student was repeatedly referred to by her professor during class and outside of class as "Monica" due to her physical resemblance to the Monica Lewinsky involved in the President Clinton scandal. The professor's comments went beyond the name calling to refer to some of the more sordid details of the scandal. The student did not report the professor's conduct to anyone during the semester in which it occurred.

At the end of that semester, the student mentioned the professor's conduct in passing during a meeting with the Dean of her College. The Dean listened to the student's complaints about the

---

[77] It is beyond dispute that Plaintiff did not advise DSU until March 21, 2005 of incidents with Dr. Panda occurring between the January 3, 2005 meeting and March 17, 2005. As such, Plaintiff cannot maintain a Title IX claim against DSU for any such actions because of the utter failure to give notice and an opportunity to remediate.
[78] Plaintiff Dep p. 100 ln 5-8 at App. A30.

- 17 -

professor and instructed her to meet with the professor's immediate supervisor to pursue the complaint. The student allegedly made half-hearted attempts to meet with the professor's supervisor, but claimed to be unable to locate him when he was in his office.

The student eventually went to the professor's supervisor several months later and filed a formal complaint. The university conducted an investigation of the student's allegations and determined to take corrective action against the professor. However, the professor decided to resign his position with the university prior to any disciplinary action. The Second Circuit held that no reasonable jury could conclude the university acted with deliberate indifference to the student's complaint.[79]

Plaintiff's complaint herein regarding the December, 2004 banter falls well below the egregiousness of the harassing conduct in Hayut. Nevertheless, DSU was willing to pursue an investigation should Plaintiff have wanted to make a formal complaint. Plaintiff intentionally refused to make such a complaint, as compared to the indifference exhibited by the student in Hayut. When Plaintiff returned to make a formal complaint, DSU investigated thoroughly, much like the university in Hayut. DSU respectfully suggests that in light of the "constellation of surrounding circumstances, expectations, and relationships" known at the time, it acted reasonably as to Plaintiff's January, 2005 complaint and Plaintiff's Title IX claim must therefore be dismissed.[80]

## IV.   Plaintiff Has Failed To State A Claim Against DSU Pursuant To Title VI.

Title VI provides in pertinent part that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."[81] To establish a claim under Title VI, Plaintiff must show: (1) DSU, as an institution, engaged in racial

---

[79] Hayut, 352 F.3d at 753.
[80] Johnson, 267 F.Supp.2d, n.6 (whether gender oriented conduct rises to the level of actionable harassment depends on constellation of surrounding circumstances, expectations and relationships).
[81] 42 U.S.C. § 2000d.

discrimination against Plaintiff, (2) DSU is receiving federal financial aid, and (3) Plaintiff was an

entitled beneficiary of the program or activity receiving the aid.[82]  DSU cannot be found vicariously

liable under Title VI.[83]  Instead, Plaintiff must prove that DSU, as an institution, intentionally

discriminated against Plaintiff because of her race.[84]

The facts, even when considered in a light most favorable to Plaintiff, provide absolutely no

basis for a claim that DSU intentionally harassed or discriminated against Plaintiff on account of her

race.  Plaintiff concedes that no personnel from DSU, ***including Dr. Panda***, discriminated on account

of Plaintiff's race.[85]  Indeed, Plaintiff cannot state a lucid reason for why she filed a racial

discrimination claim against DSU.[86]

Instead, Plaintiff weaves a confused patchwork of unrelated incidents in an effort to craft a

claim of racial harassment.  Plaintiff's racial harassment claim against DSU proves threadbare upon

scrutiny.  First, the incidents relied upon by Plaintiff do not involve conduct by DSU.  Second, Plaintiff

cannot support a Title VI claim with an allegation that DSU should have done something about the

conduct of others.

Plaintiff first relates an uncorroborated exchange of crude comments she had with three

African-American DSU students after they did not make enough room for her to walk past them.[87]

Plaintiff concedes that there is nothing about this incident that pertains to her complaints about Dr.

---

[82] Babiker v. Ross Univ. Sch. of Med., 2000 WL 666342, *4 (S.D.N.Y. May 19, 2000) (citations omitted) (attached at App. A166 to A175).
[83] See, Langadinos v. Appalachian Sch. of Law, 2005 WL 2333460, *10 (W.D.Va. Sept. 25, 2005) (attached at App. A176 to A188) (Under Title VI, educational institution is not vicariously liable for conduct of its personnel).
[84] Id. (Rejecting plaintiff's claim that school's failure to enforce its nondiscrimination policies gave rise to Title VI liability because ". . . a school faces liability only when it intentionally does something wrong, not when it merely sits by and does nothing at all.") (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 568 (3rd Cir. 2002) (rejecting theory that deliberate indifference to plaintiff's civil rights is actionable under Title VI in school setting) (citing Alexander v. Sandoval, 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (Holding Title VI prohibits only intentional discrimination, not discrimination by omission))).
[85] Plaintiff Dep p. 106 ln 3-21; p. 117 ln 8-17; p. 118 ln 1-3 at App. A32 to A36.
[86] Plaintiff Dep p. 106 ln 3-21 at App. A32.  DSU leaves Plaintiff to her burden of proving a good faith basis for having brought her Title VI claim against DSU.
[87] Plaintiff Dep p. 115 ln 3 to p. 116 ln 4 at App. A34 to A34.

- 19 -

Panda.[88]  Next are 3-4 uncorroborated telephone conversations with a fellow DSU student, whose last name Plaintiff cannot recall.[89]  According to Plaintiff, the caller warned Plaintiff not to return to campus because African-American students were upset over her complaints about Dr. Panda.[90]

Plaintiff also claims to have had a February, 2005 conversation with Dr. Panda in which he inquired whether Plaintiff was bringing a sexual harassment suit against "all the black men at school."[91]  Plaintiff responded with a colloquialism of lining men up for her, and volunteered sexually suggestive banter about black men propositioning her at work.[92]  Dr. Panda allegedly suggested that Plaintiff take up any such offers by black men.[93]  Plaintiff equates the mere reference of black men as somehow racially harassing Plaintiff.  Dr. Panda denies having this conversation with Plaintiff.[94]

There is nothing to substantiate that these incidents ever occurred.  The Court cannot accept Plaintiff's "naked assertions unsubstantiated by specific factual support."[95]  Dismissal of the Plaintiff's Title VI claim against DSU is appropriate because the claim is based solely on Plaintiff's conclusory allegations of discrimination.[96]  Even if the Court were to assume that the incidents did occur as Plaintiff suggests, the incidents still do not support a Title VI claim against DSU.  It is without dispute that none of the incidents from which Plaintiff draws her conclusory allegations of racial harassment involve conduct by DSU.

---

[88] Plaintiff Dep p. 116 ln 8 to p. 117 ln 1 at App. A34 to A35.
[89] Plaintiff Dep p. 45 ln 7 to p. 46 ln 9; p. 48 ln 10 to p. 49 ln 21; p. 50 ln 1 to p. 51 ln 1; p. 52 ln 23 to p. 53 ln 18; p. 66 ln 8-18; p. 88 ln 23 to p. 89 ln 19 at App. A14 to A25.
[90] Id.
[91] Chronology at App. A5 to A9.
[92] Id.
[93] Id.
[94] Panda Dep p. 92 ln 12-16 at App. A38.
[95] See Tripp v. Long Island Univ., 48 F.Supp.2d 220, 223 (E.D.N.Y. 1999) (dismissing student's Title VI claim against university because it was based on nothing more than conclusory allegations of racial animus) (citation omitted).
[96] See Babiker, 2000 WL 666342 at *4-5 (attached at App. A166 to A175) (holding that hearsay, conclusory allegations are insufficient, as a matter of law, to give rise to an inference of discrimination) (citing Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging . . . discrimination by a university must do more than recite conclusory allegations."); Adams v. Andrews, 1999 WL 544727, *2 (S.D.N.Y. July 27, 1999) ("Conclusory allegations do not a cause of action make [under Title VI].") (attached at App. A189 to A191).  See also, Aoutif v. City Univ. of New York, 2005 WL 3334277, *4 (E.D.N.Y. Dec. 8, 2005) ("conclusory, isolated, and unspecified statements cannot provide a rational basis for inferring discriminatory intent or motivation, and a claim based on such allegations cannot survive a motion to dismiss.") (citation omitted) (attached at App. A192 to A195).

- 20 -

To the extent Plaintiff suggests that DSU should have acted to prevent the conduct Plaintiff considers racially harassing, such as by enforcing DSU's nondiscrimination policies, Plaintiff still does not satisfy the essential elements of a Title VI claim against DSU.  Title VI liability lies against DSU only for its own intentional, affirmative conduct constituting unlawful harassment or discrimination on account of race.  In other words, DSU faces Title VI liability only when it intentionally does something wrong, not when it merely sits by and does nothing at all.[97]  Accordingly, Plaintiff's Title VI claim against DSU must be dismissed because Plaintiff fails to identify any actionable conduct by DSU constituting harassment or discrimination on account of Plaintiff's race.

## V. Plaintiff Has Failed To State A Claim Warranting Imposition Of Punitive Damages

"In order to recover punitive damages in a Title VII claim, the plaintiff must show that the defendant acted 'with malice or with reckless indifference to the federally protected rights of [the plaintiff]'."[98]

> The United States Supreme Court emphasized that intentional discrimination or retaliation, by itself, is not enough to assess punitive damages; rather, the defendant must have been at least recklessly indifferent to the fact that the plaintiff's federal rights were being violated.  Therefore, an employer who intentionally engaged in conduct that violated federal discrimination laws, but was unaware that her conduct violated any laws, would not be liable for punitive damages.  The conduct need not be egregious, however; if the employer was acting 'in the face of a perceived risk that its actions [would] violate federal law,' punitive damages are warranted.[99]

Unlike the plaintiff in Lafate, Plaintiff cannot point to malice or reckless indifference on behalf of DSU.  The conclusory allegations Plaintiff has lodged in this matter certainly do not rise to the level of "reprehensible" conduct or malice required to warrant an award of punitive damages.  Otherwise,

---

[97] Langadinos, 2005 WL 2333460, at *10 (attached at App. A176 to A188) (Rejecting plaintiff's claim that school's failure to enforce its nondiscrimination policies gave rise to Title VI liability because ". . . a school faces liability only when it intentionally does something wrong, not when it merely sits by and does nothing at all.") (citing Pryor, 288 F.3d at 568 (rejecting theory that deliberate indifference to plaintiff's civil rights is actionable under Title VI in school setting) (citing Alexander, 532 U.S. at 280 (Holding Title VI prohibits only intentional discrimination, not discrimination by omission))).

[98] Lafate v. Chase Manhattan Bank (USA), 123 F.Supp.2d 773, 784 (D. Del. 2000) (quoting Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999)).  Although these cases involve punitive damages in employment discrimination cases, DSU respectfully submits that for similar reasoning there can be no claim for punitive damages in this case.

[99] Lafate, 123 F. Supp.2d at 784 (internal citations omitted) (quoting Kolstad, 527 U.S. at 2124-25).

PHLDMS1 4318423v.1

any plaintiff could simply allege that a defendant acted with malice or reckless indifference to the plaintiff's federally protected rights and get a claim for punitive damages before a jury. The United States Supreme Court in <u>Kolstad</u>, as adopted by our District in <u>Lafate</u>, holds a plaintiff to a higher standard than mere wishful thinking to support a punitive damages claim. Accordingly, Plaintiff's request for punitive damages should be dismissed.

PHLDMS1 4318423v.1

## CONCLUSION

For the reasons and authorities set forth above, the DSU is entitled to summary judgment.


Respectfully submitted by:

**WHITE AND WILLIAMS LLP**

**MARC S. CASARINO (#3613)**
**JENNIFER HURVITZ BURBINE(#4416)**
824 N. Market Street, Suite 902
Wilmington, DE 19801
Telephone: 302-467-4520
Facsimile: 302-467-4550
Attorneys for Defendant *Delaware State University*

Dated:   May 30, 2008

- 23 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAMMY HURD, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DELAWARE STATE UNIVERSITY and | :    C.A. No. 07-117 |
| DANDESON PANDA, individually and in his | : |
| official capacity, | : |
| | : |
| Defendants. | : |
| | : |

## CERTIFICATE OF SERVICE

I, Marc S. Casarino, do hereby certify that on this 30th day of May, 2008, the OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT DELAWARE STATE UNIVERSITY was served upon the following via U.S. Mail:

Ronald G. Poliquin, Esquire
Young, Malmberg & Howard, P.A.
30 The Green
Dover, DE 19901

Richard R. Wier, Jr., Esquire
Two Mill Road, Suite 200
Wilmington, DE 19806

**WHITE AND WILLIAMS LLP**

By:    /s/ *Marc S. Casarino*
MARC S. CASARINO (#3613)
824 North Market Street, Suite 902
P. O. Box 709
Wilmington, DE  19899-0709
(302) 467-4520

Attorneys for Defendant *Delaware State University*